Good morning, Your Honor. May it please the Court, Counsel, Dan Maloney, Federal Defender Office, Reno, Nevada, on behalf of Appellant Michael Riley White, with the Court's permission, I'm planning on trying to save two minutes for rebuttal. All right. This case is a somewhat unique fact situation. In this case, what happens is that the government, through the two police officers, Officer Rowe and Officer Johnson of the Sparks Police Department, establishes two sets of circumstances. Circumstance number one is the testimony is that Mr. White is never suspected in any way of any criminal activity and remains free to go throughout the entire questioning by the police. Question number two is that while they are in his presence, at least Officer Rowe develops reasonable suspicion based on specific facts specific to Mr. White that Mr. White is armed, that is, that he has a weapon somewhere on his person that they can't see, and that he is dangerous. There is a potential he would use the weapon. And the question for this case is, once presented with that situation, Mr. White bolts. So how does our Fourth Amendment jurisprudence deal with that situation? That's the issue that we have presented in this case. Is it your position that a police officer has to have reasonable suspicion that the defendant is armed before he can ask the defendant, are you armed? The question is the third step of the analysis. And I'll try and explain that. He can ask him any question he wants. Scalia, of course. At any time that he wants. He can ask him about baseball. He can ask him about the weather. He can ask him about politics. If it amounts to a detention. And if he's armed. Where is the detention? Where is the seizure when he asks him, are you armed, sir? At that point, Mr. White can say no. He can say yes. He can say I don't know. And he can turn and walk. He did say no. And he turned and ran. And he turned and ran. And what happened when he turned and ran is the police chased him down and kicked the crap out of him. And a reasonable person under the totality of those circumstances is going to. Didn't he turn around, pull out the gun and drop it? The gun, I'm not sure if he pulled it out or if it fell out. But, yeah, the gun comes out during the. It fell out before he was grabbed by the police officer, right? Yeah. While he was running, it fell. We need the seizure to occur prior to the gun. There's no question about that. Now, where's the seizure? What we're saying is the seizure happens when a reasonable person under the totality of the circumstances feels that they are not free to leave. And the facts of these circumstances show that Mr. White was not free to leave. Because when he did leave, he was pursued and apprehended. That's the argument. But he left by scampering away. I mean, don't you see that as a possible indication that something is up? Let me take another shot at this, because I think we're focused on the same thing. And the focus is, you know, which – where do we put the flight? And for my purposes, free to leave means free to leave. But do the circumstances of his leaving enter into the equation? And we're saying no. If he's free to leave, he can run away, he can walk away, he can bike away. And let me – Sotomayor, what is that old-time instruction that flight is indicative of consciousness of guilt? Let me try this. Basically, Hodari and ward law. So ward law, you can use reasonable suspicion. Hodari, no seizure until you put hands or submission to the show of authority. Our position is that those cases are cases before there was any seizure. The seizure in this case happens, and the strongest case is really the out-of-circuit case in Florida v. Royer that talks about a detention even momentarily. In Royer, initial voluntary encounter, that can evolve to a seizure. That evolves to a seizure when the person has satisfied the police of the questions which led the police to approach him, and now the police turn upon him as a suspect in his own criminal activity. And our position is that under those circumstances, then we go to the reasonable person test, objective test. Did the person feel free to leave? And was the person indeed free to leave? Mr. White did not. If he did feel free to leave, he was wrong. He wasn't free to leave. His actions in running away were actions that were saying, I don't want to engage in this consensual encounter any longer. And the police actions in pursuing him were saying, not until we are through with you. Is that addressing your question? What if he had run off before the police started running after him, and in his flight he drops the pistol, and then they start to run after him? Would that make any difference? If the police see the pistol come out? Yes. Before they take it, say before they even talk with him even? No, I mean after they talk with him. He said, no, I don't have a gun. And then he starts to run. They watch him. And as he runs, the pistol falls out. Then they can start chasing him, right? I think they can, yes. I think they can. Once they see the gun, that would be reasonable suspicion. And there's not much difference here between that scenario and what happened, right? Except that they started running after him when he started running after him. It's a pretty fine line. But we get to the second part of the testimony. And the second part of the testimony is before he ran off, they have reasonable suspicion that he is armed and dangerous, and they are investigating that criminal behavior. And it's really not that big a step to say they are detaining him to investigate that criminal behavior. That's what we say happened here. A consensual interrogation as to whether he has a gun is, in your view, under these circumstances, a detention without reasonable suspicion. At the point when he was not free to leave, and he was not free to leave when they focused on him. What is the evidence which compels the finding that he was free to leave, not free to leave? The evidence is that, number one, we're using the district court's ruling. The district court's ruling that they had those and that was a necessary part of the motion indicates that it wasn't just a question, that there was something else. There was a constitutionally significant event. Is it mandatory? The district court found that the encounter was consensual and not a seizure. The initial encounter was consensual. Yes. And then the part that we rely on is that when you get to the motion for release on bail, the government specifically asks here, the government would respectfully request that the court reconsider its previous order denying and supplement its findings of fact and conclusive law to include a finding that the defendant abandoned the firearm prior to any seizure. The court doesn't make that ruling. At least at the trial court level, the parties understood that there was some sort of ruling that there was no, that there was a seizure. At least there was no ruling that there was no seizure. And we're saying when you take reasonable suspicion, you combine these cases, the totality of the circumstances show that when the person did try to leave, he was not indeed free to leave, that it is a finding by the court that once they focused upon him, began questioning him about his criminal activities, that was a temporary detention and that that detention needed to be justified by some sort of reasonable suspicion. The court found that reasonable suspicion. We say that finding was incorrect. Why would that ruling be required on a bail hearing? The ruling used. Because the, what that went to on the bail hearing was, it wasn't required on the bail hearing. It was an understanding of the, of the ruling that was made on the motion to suppress. And the ruling on the bail hearing was, did defendant have a possibility of prevailing on appeal? And the court says that if my finding on reasonable suspicion is incorrect, he does have a strong possibility of prevailing on appeal. If that finding is incorrect, the gun needs to be suppressed. And when you put those things together, it's reasonable that the parties understood, focused on this person, at that point he was temporarily detained. It's the continuum of consensual encounters that they found in Royer and other cases. Consensual encounters can lead to a temporary detention. And a temporary detention, even momentarily, needs to be supported by reasonable suspicion. All right. So I'm, I'm kind of over my time. The one other thing. Don't worry, we'll give you an extra minute afterwards. Okay. And the one other thing, the real key finding then becomes this reasonable suspicion finding. And I would like to be able to address the court a little bit about that also. All right. Good morning. Good morning. May it please the Court. Elizabeth Olson on behalf of the United States. The district court found that the encounter, the initial encounter, there were two encounters. The initial encounter in front of the defendant's truck and then the second encounter after he ran and dropped the gun and they apprehended him. The district court found that the initial encounter was consensual. And he reiterated that. It's on pages 9, 10, and 11 of the excerpts of record, three times in his order. Is that a factual finding or a legal finding? That is, it's a legal finding. I mean, it's a mixed question of facts and law. I mean, the district court went through the factors for when you determine whether an encounter is consensual and made specific findings of fact. Only one officer approached Mr. White. He didn't, the officer didn't brandish his weapon or put his hand on his weapon. He did not speak in an authoritative manner or tone. It was in a public setting. The five factors that this court has identified for when an encounter is consensual, the district court made findings on four of those that point to a consensual encounter. And what is our scope of review or our standards of review on the question, the mixed question of facts and law? It's de novo review on the mixed question of facts and law, but the underlying factual findings are reviewed for clear error. And certainly, I mean, they were uncontested, the facts that the district court found at the hearing were essentially uncontested. The only factor that, of this court's five-factor test, the only one that doesn't weigh in favor of a consensual encounter is that the officers never specifically told Mr. White that he was free to leave. But this court has said that this one factor is not dispositive. So looking at the totality of that initial encounter, clearly this court should find that it was consensual, as the district court found. Now, the defendant seems to argue that at some point that encounter turned into a seizure. And the district court refused to make that finding, implying that perhaps there was a seizure before the gun was dropped. And that that finding, at least that implicit finding, was inconsistent with what you've just said. I think if you look at that order and also at the order in the excerpt of record, the order on the suppression hearing, it is clear that there was some confusion about the legal requirements in the district court. I mean, on the question, the judge found that the encounter was consensual. He reiterated twice that the encounter was consensual. But then he went on to look at whether the officers, whether the request for the pat-down was lawful. Now, there's two reasons why he wouldn't have had to do that. First of all, because there was no pat-down. And the question that the court analyzed is what's required for officers to pat down a suspect. In this case, there was no pat-down. So he really didn't need to go there. And second of all, because the encounter was consensual, the request for the pat-down was perfectly appropriate. And so he also didn't need to, I mean, the court essentially was looking at what level, what is needed for officers to request consent to pat down. But he analyzed the question as what's required for a pat-down. And if you look specifically at that analysis, putting aside the reasons why it wasn't necessary, and just look at what the court said, it's on page 11 of the excerpt of record, he said there's two factors, two requirements for an officer to pat down a suspect. The officer has to be lawfully in the presence of the individual such that it's appropriate for them to be concerned about their safety. And second of all, they need reasonable suspicion. Now, in analyzing those two factors, the first factor, the court said, well, I've already found that the encounter was consensual. So the first factor is met. But then he went on also to look at whether the officer had reasonable suspicion, which in light of the finding that, or the court's conclusion that the encounter was consensual wasn't necessary. I think the reason that the court did this, even though it wasn't necessary, is that if you look at what the defendant was arguing below. Kennedy, the encounter can be consensual as far as answering questions. Yes. Stopping his motion without the pat-down being consensual. Oh, absolutely. If the officers had, in fact, patted down the defendant without his consent, I mean, to pat down an individual during a consensual encounter, an officer needs one of two things. They either need reasonable suspicion or they need consent. In this case, the officer asked for consent. Mr. White turned as if he was going to allow the officers to do that and then took off running. The officers chased after him. They didn't yell halt. They didn't yell stop until after he dropped the gun. He did actually, Officer Rowe testified that he, that Mr. White took the weapon out of his waistband and started to turn, pointing it towards their direction and then fumbled and dropped the gun and left. But I think that if you look at what the defendant was arguing below, that the defendant's motion to suppress said that the weapon that was recovered was the fruit of an unlawful request, that it was unlawful because the officers didn't have reasonable suspicion to request the pat-down. The government responded in its motion that for there to be a Fourth Amendment violation, there has to be a seizure and the seizure has to be unreasonable. And in reply, the defendant said, that's not what we're arguing. We're arguing that this was an unlawful request. And if you look at the transcript, the argument at the end of the Is there any such thing as an unlawful request? No, there isn't, Your Honor. In the context of a consensual encounter, the officers can ask questions. They can ask for consent. This Court and the Supreme Court have said an officer can ask for consent to search without any level of suspicion whatsoever. But if you look at what the defendant was arguing in the district court, pages 60 and 61 of the excerpt of record at the end of the suppression hearing, the defendant's attorney was saying even if the defendant was free to leave, the officers still didn't have any right to ask him for the pat-down. You need reasonable suspicion to even make that request. That's what they were arguing below. Now, that's incorrect. And on appeal, the defendant acknowledges that that's incorrect, that if the encounter is consensual, you don't need any level of suspicion to make that request. But that's what the defendant was arguing below. Apparently, the government didn't do a good enough job of explaining to the court that that was the wrong analysis, and so the court actually went to that second step, which it didn't need to go to. And so that's why we have the finding that we did that or the legal conclusion that we do about the reasonable suspicion. Like I say, it was unnecessary. It was superfluous. But in light of what was being argued below, and as I pointed out in our brief, I mean, there was a long line of Ninth Circuit cases, all of which I think involved traffic stops. There was for a long time a line of cases in this Court that said that an officer's questioning, that a question, if it was outside the scope of whatever was reasonable, that the question itself could be a Fourth Amendment event that could require reasonable suspicion. Now, that line of cases this Court acknowledged in Mendez is no longer good law under Mueller v. Mina and other cases in the Supreme Court. But I do think, I mean, I've seen confusion on that question still existing in the district court, because there was for so long this view in the Ninth Circuit that a question, if it was the wrong question, could trigger a Fourth Amendment requirement of reasonable suspicion. So that might be another reason why the district court. He's coming to rebut, and it might help him. Did you finish? I didn't mean to interrupt you. What happened here is what we're going to have to look at. And what happened here, the police stopped. They were talking. They had a conversation. He asked him questions, what have you. Yeah, yeah. When the reasonable suspicion arose, arguably, it was before the gun was dropped, it was when the man turned and ran. He was free to leave, but he wasn't free to run away in the way he did. And that's when the police became, had grounds to become suspicious. Now, is that an accurate statement of what's so here? I think, I mean, what happened was the officers were actually, they were coming to see a woman who was in a motel room. And as they're approaching the room, they see these two gentlemen walk out of the motel room. One of them goes to a car that's nearby. And so the police walk over, and they say, hey, what room did you come out of? Who's in there? He said, Melissa. And he told the truth on both occasions. He told the truth. He said which room he came out of, and he said who was there. And the problem came then afterwards, didn't it? Yes. If there was a problem at all. Yes. Well, in fact, what happened was, so he's fiddling with his car key, and he's very jittery, and he keeps putting his hands by his waistband. Okay. Now, they're in the context, they're just having a conversation with the guy. But if they think that he might be armed, I mean, so they asked him, are you armed? I mean, they said that he was acting nervous. He was looking around. Now, none of that by itself, you know, nervousness alone obviously doesn't create reasonable suspicion. But the constant putting of his hands by his waistband, they asked him if he was armed. They asked him if he would consent to a search. Now, I think the defendant's position seems to be that that question somehow focused specifically on the defendant and turned the consensual encounter into a seizure. And I would say that that cannot possibly be, because if you say that the request for a pat-down turns a consensual encounter into a seizure, then there can never be a request for a pat-down in a consensual encounter. And this Court has said over and over that there can be. So that question alone simply can't turn the encounter into a seizure. My time is out. Thank you very much. Mr. Maloney. Maloney. A couple of things, and we'd like to focus. Yes, the position is you're either free to go or you're not free to go, and that's what happened. I mean, there is an alternative. Definitely, I would agree there was maybe some confusion, but there is an alternative to the trial court and the defense got this all wrong. It's that the district court maybe got it right. You can ask any question you want. The problem is when does the questioning and the continuing interrogation amount to a constitutionally significant event, that being a stop? That happens when a reasonable person would feel free, given the totality of the lead the person to believe they're not free to go, and the objective facts in this circumstance are certainly that Mr. White was not free to go. Is there any fact in this case that's in dispute, in your view, on this record? Any fact that's in dispute? No. I don't think it is. I think the facts are very clear on this. And then I don't think I'm going to get to my reasonable suspicion point, and so I'll just leave that going, unless the Court has any questions about that. Because we say that's the kind of interesting part about this, too. Thank you very much. Thank you. Thank you. Thank you, both counsel, for a very interesting argument. And the matter of the United States of America v. Michael Riley White shall stand submitted.
judges: Farris, Bea, Siler